PER CURIAM.
Burton Goldberg and Joyce Goldman were formerly husband and wife. Upon the dissolution of their marriage, the final judgment incorporated a written property settlement. Thus, the final judgment provided for the payment of $1,570.25 monthly as alimony for 121 months. In addition, the judgment provided that Burton should pay such additional amounts as Joyce should be required to pay for her separate federal, state and city income taxes incurred by reason of the alimony payments.[1]
*120 The trial judge held an evidentiary hearing upon a motion by Joyce to compel payment of past due alimony. Thereupon, the judge entered the order, here appealed, which provided in material portions as follows:
“2. The Court finds and directs that for each taxable year hereafter, during the term of the Agreement between Joyce Goldman and Burton Goldberg, Mrs. Goldman’s income taxes shall be computed on the basis of her filing joint returns with her husband, and on the basis of her filing a return as a married person filing separately, and the lesser income taxes attributable to alimony under the two computations shall be the tax to be paid by Burton Goldberg.
“3. In computing the amount of tax to be paid by Burton Goldberg, additional taxes caused or incurred by virtue of his prior payment of taxes on alimony shall, in each instance, be included in the computation.
“4. In computing the amounts to be paid on account of income taxes by Mr. Goldberg, the first $10,000.00 of taxable earned personal income, as earned personal income is defined in the Agreement, shall be taxed in the lower bracket, and alimony, together with the remainder of personal income and other income of Mrs. Goldman, shall be taxed in total pro rata in its proper bracket.”
Burton has presented three points. The first urges error upon the ruling that he is required to pay the additional income tax incurred by virtue of his prior payment of taxes on alimony. We hold that no error appears. The agreement clearly contemplates that Joyce is to receive the alimony payments free of any tax thereon. An agreement must be enforced to give effect to the clear intent of the instrument, see Shaw v. Bankers Life Company, 213 So.2d 514 (Fla.3d DCA 1968), unless the provision sought to be enforced is illegal or unenforceable for some other valid reason. See Newsom v. Acacia Mut. Life Ass’n, 102 Fla. 567, 136 So. 389 (1931). The husband could have elected to make the payments without deduction upon his own tax return. Having elected to pay Joyce’s tax on the payments, he must pay all of the taxes incurred by her because of the payments.
Appellant’s second point urges error upon that portion of the order directing the computation of the tax to be paid upon the lesser of two methods, which are: (a) as a married woman filing separately from her husband, or (b) as a married woman filing jointly with her husband. Burton contends that the amount to be paid should be figured as though Joyce were a single woman. The agreement contemplates the remarriage of Joyce. See footnote [1], supra, section (a)(ii) thereof. It uses the language “ . . . on an individual basis and on a *121 joint basis with her spouse . . ” [emphasis added] Burton’s interpretation of “individual” as meaning “as though a single person” is strained in view of the recognized fact that she would not be a single person, and the recognized fact that a married woman may not file as a single person. A trial judge may not be held in error for a failure to adopt a strained or illogical interpretation of the agreement. See Florida Sportserviee, Inc. v. City of Miami, 121 So.2d 450 (Fla.3d DCA 1960).
The third point presented claims error upon that portion of the order requiring that in computing the amounts to be paid by Burton, the first $10,000 of the wife’s earned personal income shall be taxed in the lower bracket and alimony together with all other income shall be taxed in total pro rata in its proper bracket. This provision is fully supported by the agreement and any other interpretation would deprive Joyce of the use of the lower bracket, thus increasing her total payment so that she would be paying a tax on the alimony received.
Affirmed.

. “8.1 Alimony
(a)Respondent agrees to pay the Petitioner or Petitioner’s estate in the event of Petitioner’s demise during the period of the payments hereinafter provided, and regardless of Petitioner’s remarriage or Respondent’s death, as alimony and as full and final satisfaction by Respondent of his obligations to support and maintain Petitioner and of Petitioner’s rights to property, periodic alimony payments as follows:
(i) $1,570.25 on the third day of February 1972 and continuing thereafter on the third day of each and every month up to and including 3 February 1982, making an aggregate of 121 monthly payments, and
(ii) Such additional amounts as Petitioner shall be required to pay for her separate federal, state and city income taxes, if any, by reason of the alimony payments received. For the purpose of determining the amount that shall be paid by Respondent to Petitioner as additional alimony resulting from receipt of said alimony by Petitioner and causing Petitioner to pay income taxes; said amount shall be determined by the Petitioner preparing a computation both on an individual basis and on a joint basis with her spouse and the lesser excess tax required shall be the amount that shall be paid by Respondent to Petitioner as such additional alimony. In determining such excess tax as hereinabove referred to, the first $10,000.00 of income earned by said Petitioner from her personal services (the computation which shall be prepared on a joint basis will include not only the first $10,000.00 of income earned by the Petitioner, which shall be calculated in the lowest bracket, but shall also include for said calculation the income of the Petitioner’s spouse) shall be calculated as taxed in the lowest brackets and the alimony payments thereafter in the next brackets. Any income earned by the Petitioner from personal services in excess of $10,000.00 will be taxed on a pro-rata basis with the alimony payments received.
(b) ‘Income of the Petitioner from Personal Services’ shall include any sums earned by Petitioner as wages, commissions or salary from bona fide, genuine personal services performed by Petitioner, excluding, without limiting this exclusion to, income received in whole or in part by reason of remarriage, gifts, investments, commissions not earned by her personal services or otherwise. Any question of the bona fides of personal service income may be submitted to the Court for determination.
(c) The payments required to be made in (ii) herein for income tax of the wife shall be made to the Petitioner on or before April 8 of each year, and for quarterly tax estimates at least 8 days prior to their due date; provided, how *120 ever, that Respondent has received a statement from Petitioner’s accountant of the ‘earned’ income received by Petitioner, and the amount found to be due as income tax no later than April 1 of each year and each quarterly estimate no later than 15 days prior to its due date.
(d) In the event that Respondent does not pay to Petitioner the additional amounts as are required to pay her taxes as set forth in (i) and (ii) and by reason thereof Petitioner suffers interest and/or penalties, the Respondent agrees to indemnify and hold the Petitioner harmless from the payment of same including Petitioner’s reasonable and necessary accounting and legal fees.
(e) Each year Petitioner, through her accountant, Robert Altemus, C.P.A., shall inform Respondent of the amount of taxes due in accordance with the provisions of this paragraph (8.1). It is the intent of the parties that if Petitioner remarries, her husband shall not be required to disclose his financial affairs to Respondent personally. In the event that Robert Altemus ceases to serve as Petitioner’s accountant, the parties will agree as to his successor C.P.A. for purposes herein.”
The agreement also provided:
“25. DISAGREEMENT
If the parties cannot resolve any dispute arising under the interpretations of this Agreement, any dispute(s) shall be submitted to and resolved by the Court having jurisdiction of this cause in accordance with the terms and conditions of this Agreement; however, the Court and the parties may consider the intent of the parties as expressed in the oral agreement in open Court on 3 February 1972. Any conflict between the provisions of the oral agreement and provisions contained herein shall be determined by the provisions of this written Agreement.”